UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JENNIFER ROSE GARDENIER,

                Plaintiff,

v.                                           5:16-CV-0073
                                                                       (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

OLINSKY LAW OFFICE                      HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.            LORIE E. LUPKIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. No. 16.)

      Currently before the Court, in this Social Security action filed by Jennifer Rose Gardenier ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 10, 14.) For the reasons set forth below it is ordered that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1975. (T. 58.) She completed high school. (T. 144.) Generally, Plaintiff's alleged disability consists of agoraphobia, depression, fibromyalgia, personality disorder, anxiety, and a learning disorder. (T. 58.) Her alleged disability onset date is January 15, 2011. (T. 58.) Her date last insured is June 30, 2016. (T. 21.)[1] She previously worked as a janitor, an assembly line worker, and an inspector. (T. 144.)

### B. Procedural History

On December 9, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 68.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On April 10, 2014, Plaintiff appeared before the ALJ, Marie Greener. (T. 32-56.) On July 31, 2014, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 16-31.) On November 23, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

---

[1] Elsewhere in the record Plaintiff's date last insured is listed as March 31, 2016. (T. 68.) However, at the hearing the ALJ and Plaintiff's counsel agreed on a date last insured of June 30, 2016. (T. 34-35.)

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law. (T. 21-28.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2016 and Plaintiff had not engaged in substantial gainful activity since January 15, 2011. (T. 21.) Second, the ALJ found that Plaintiff had the severe impairments of depressive disorder, an anxiety disorder, and borderline personality disorder. (T. 22.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 22-24.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels. (T. 24.) The ALJ found that Plaintiff had the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concertation for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others in order to carry our simple tasks, and handle work-related stress in that she could make decisions directly related to the performance of simple tasks in a position with consistent job duties that did not require her to supervise or manage the work of others. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 27-28.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred at step two in assessing the

severity of Plaintiff's impairments. (Dkt. No. 10 at 9-11 [Pl.'s Mem. of Law].) Second, Plaintiff argues the RFC determination is not supported by substantial evidence. (*Id.* at 11-14.) Third, and lastly, Plaintiff argues the step five determination is not supported by substantial evidence. (*Id.* at 14-15.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ did not err at step two of the sequential evaluation. (Dkt. No. 14 at 4-8 [Def.'s Mem. of Law].) Second, Defendant argues substantial evidence supports the ALJ's RFC assessment. (*Id.* at 8-17.) Third, and lastly, Defendant argues the ALJ correctly relied on the Medical-Vocational Rules at step five. (*Id.* at 17-18.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation

process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether a plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* C.F.R. § 404.1520(c). The plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.*, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 404.1512(a).

A "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered

6

the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue*, 2008 WL 833968, at *2 (N.D.N.Y. 2008) (citing *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y.1995)).

Plaintiff argues the ALJ's step two analysis was deficient because the ALJ failed to conclude that Plaintiff's physical impairments were severe. (Dkt. No. 10 at 9-11 [Pl.'s Mem. of Law].) Specifically, Plaintiff contends that her impairments of carpal tunnel syndrome, asthma, and obesity were severe impairments. (*Id.* at 10-11.)

The ALJ's determination that Plaintiff's carpal tunnel syndrome was not severe is supported by substantial evidence. In her step two determination the ALJ outlined Plaintiff's allegations regarding her carpal tunnel syndrome, but ultimately concluded it was not a severe impairment. (T. 22.) The ALJ properly determined that there was not enough documentation in the record to show that this condition was a severe impairment. (*Id.*) Although Plaintiff testified that she suffered from carpal tunnel

syndrome and that her hands go numb (T. 43), Plaintiff failed to show that she received treatment for this condition or that she had functional limitations due to this condition.

Consultative examiner, Kalyani Ganesh, M.D., noted on examination that Plaintiff's hand and finger dexterity were intact and she had full grip strength bilaterally. (T. 231.) Despite her carpal tunnel syndrome, Plaintiff was able to work part time as a dishwasher, cook, clean, do laundry, shop, and she enjoyed playing video games and using a computer. (T. 224, 230, 340.) Therefore, the ALJ did not err in her conclusion that Plaintiff's carpal tunnel syndrome was a non-severe impairment because the record failed to show that this impairment caused more than minimal effect on Plaintiff's ability to work.

Plaintiff also contends that her asthma was a severe impairment. (Dkt. No. 10 at 10 [Pl.'s Mem. of Law].) The ALJ noted in her step two analysis that Plaintiff's asthma was non-severe based on the evidence in the record. (T. 22.) Substantial evidence supports the ALJ's determination. Although Plaintiff reported a history of asthma which was weather or activity related, her asthma did not require emergency room visits and despite her asthma she continued to smoke half a pack of cigarettes daily. (T. 229.) The record contains no indication that Plaintiff's asthma would have more than a minimal effect on Plaintiff's ability to work.

Lastly, Plaintiff argues that the ALJ failed to assess the severity of her obesity. (Dkt. No. 10 at 10-11 [Pl.'s Mem. of Law].) "Obesity is not in and of itself a disability." *Yablonski v. Comm'r of Soc. Sec.*, 03-CV-0414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008) (citing *inter alia* SSR 02-1p, 2002 WL 34686281, at *4 (Sept. 12, 2002)). SSR 02-1p provides that, as with any other medical condition, the SSA "will find

that obesity is a 'severe' impairment when, alone or in combination with other medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p, 2002 WL 34686281, at *4.  For disability program purposes, "[t]here is no specific level of weight or BMI that equates with a 'severe' or 'not severe' impairment." *Id.*

Here, Plaintiff did not allege disability due to obesity.  (T. 42-45, 58, 229.) Although Plaintiff argues her BMI is 39.7, as noted, this alone does not establish severity.  (Dkt. No. 10 at 10 [Pl.'s Mem. of Law].)  Plaintiff stated at the hearing that her doctor attributed body pain to her weight (T. 48); however, no medical source opinion of record attributed any functional limitations to Plaintiff's obesity (T. 229-232).  The ALJ did not err in determining Plaintiff's obesity was non-severe because Plaintiff did not allege that her obesity was a disabling impairment and no medical opinion indicated that Plaintiff's obesity limited her ability to perform basic work activities.  *See Martin v. Astrue,* 337 Fed.App'x. 87, 89 (2d Cir. 2009).

Further, the ALJ discussed Plaintiff's physical impairments in her RFC analysis. (T. 25-26.)  The ALJ afforded Dr. Ganesh's opinion, that Plaintiff had no gross physical limitations to sitting, standing, walking or the use of her upper extremities significant weight.  (T. 26, *referring to* T. 231.)  Therefore, although the ALJ properly determined that Plaintiff had no severe physical impairments at step two of the sequential process, any error would nonetheless be harmless because the ALJ discussed Plaintiff's physical impairments in her RFC analysis.

**B. The ALJ's RFC Determination**

Plaintiff's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). In making her RFC determination the ALJ relied on the medical opinion evidence in the record provided by the State agency medical consultants, Dr. Ganesh, T. Harding, Ph.D., and Christina Caldwell, Psy.D. (T. 26.)

In formulating Plaintiff's mental functional ability, the ALJ afforded the opinion of Dr. Harding, a non-examining State agency medical consultant, "significant weight" and the opinion of consultative examiner Dr. Caldwell, "reduced weight." (T. 26.)

On January 24, 2013, Dr. Caldwell performed a psychiatric examination and provided a medical source statement. (T. 224-228.) On examination Dr. Caldwell observed that Plaintiff was well groomed, had appropriate eye contact, was coherent and goal directed, was agitated and irritable, her attention and concentration were mildly impaired, her memory was intact, and her insight and judgment were fair to poor. (T. 226.)

In a medical source statement Dr. Caldwell opined that Plaintiff was able to follow and understand simple directions and instructions. (T. 227.) She further opined that Plaintiff was limited in her ability to perform simple tasks independently, and maintain attention and concentration. (*Id.*) She opined Plaintiff was able to maintain a regular schedule and learn new tasks independently. (*Id.*) Dr. Caldwell stated Plaintiff was limited in her ability to perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress. (*Id.*)

On February 12, 2013, Dr. Harding reviewed the medical evidence in the record at that time. (T. 65.) He opined that "[a]lthough [Plaintiff] has some problems with

memory and concentration, thought processes are logical and coherent, there are no psychotic manifestations, [and] insight and judgment are fair. [Plaintiff] is capable of simple work in a setting which does not emphasize interpersonal interaction." (*Id.*)

None of Plaintiff's treating mental health providers completed a medical source statement; however, they provided treatment notations which included mental status examinations. (T. 200-223, 277-283, 285-336, 337-348.)

Plaintiff argues that the ALJ erred in affording more weight to Dr. Harding, who did not examine Plaintiff and did not have access to a complete record, than Dr. Caldwell, who examined Plaintiff. (Dkt. No. 10 at 11-13 [Pl.'s Mem. of Law].) To be sure, in general, more weight is given to the opinion of a source who has examined a plaintiff than to the opinion of a source who has not examined a plaintiff. 20 C.F.R. § 404.1527(c)(1).

As a matter of law, the ALJ did not err in affording more weight to the non-examining State agency medical consultant than to the consultative examiner. An ALJ may rely upon the opinion of a non-examining State agency medical consultant, such as Dr. Harding, because such consultants are deemed to be qualified experts in the field of social security disability. *House v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 138, 151-152 (N.D.N.Y. 2012) (citing, *inter alia, Leach ex rel. Murray v. Barnhart*, No. 02 Civ. 3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.")). The Second Circuit has even held that the opinion of a non-examining State agency medical consultant may outweigh the opinion of a treating source. *See Camille*

11

*v. Colvin,* 652 Fed.App'x. 25, 28 (2d Cir. 2016) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations ... permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record.")). Therefore, the ALJ did not err as a matter of law in affording more weight to the non-examining source than to the examining source.

Plaintiff also argues that Dr. Harding's opinion was based on a stale record and therefore cannot constitute substantial evidence. (Dkt. No. 10 at 13 [Pl.'s Mem. of Law].) To be sure, statements that are "conclusory, stale, and based on an incomplete medical record" may not be considered substantial evidence to support an ALJ finding. *Griffith v. Astrue*, No. 08-CV-6004, 2009 WL 909630, at *9 n. 9 (W.D.N.Y. July 27, 2009).

First, Dr. Harding's opinion was not "conclusory," but contained a thorough review of the record and narratives. (T. 60-65.) Second, although Dr. Harding's opinion was not based on the whole administrative record, evidence submitted after the doctor issued his opinion demonstrated substantially similar limitations and findings. *Camille v. Colvin,* 104 F. Supp. 3d 329, 343-344 (W.D.N.Y. 2015), *aff'd,* 652 Fed.App'x. 25 (2d Cir. 2016) ("based on only part of the overall administrative record, the treatment notes and opinions in the record before and after [the doctor's] opinion demonstrate substantially similar limitations and findings"). Here medical records submitted after Dr. Harding's review did not contain medical source statements from treating providers, evidence of new or worsening conditions, or any other evidence that was substantially different from the medical evidence Dr. Harding had before him. Therefore, the medical evidence obtained after Dr. Harding's opinion was substantially similar to the evidence the doctor

had and would not likely change his ultimate opinion regarding Plaintiff's mental functional abilities.

Plaintiff further argues that the ALJ erred in his RFC determination because she failed to provide for Plaintiff's limitations in her ability to interact appropriately with the general public. (Dkt. No. 10 at 12 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the medical sources in the record opined that Plaintiff had moderate difficulties in maintaining social functioning. (*Id.*)

First, the Second Circuit has held that a moderate limitation would not necessarily preclude the ability to perform unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Matta v. Astrue*, 508 Fed.App'x. 53, 55 (2d Cir. 2013) ("[t]he ALJ found that plaintiff had moderate difficulties in concentration, persistence and pace and moderate difficulties in social functioning that limit [him] to simple, routine, low-stress, and unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public.") (internal quotation omitted); *see Whipple v. Astrue*, 479 Fed.App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment). Therefore, contrary to Plaintiff's assertions, a moderate limitation in social functioning would not necessarily preclude the ability to perform the social requirements of unskilled work.

Second, Dr. Harding took into consideration Plaintiff's moderate difficulties in social functioning and opined that she was nonetheless capable of simple work in a setting that did not emphasize interpersonal interaction. (T. 65.) Although Dr. Caldwell opined that Plaintiff was "limited" in her social abilities, she did not qualify that limitation. (T. 227.) The ALJ afforded Dr. Caldwell's opinion, that Plaintiff was limited in her social abilities, reduced weight because it was "non-specific" and inconsistent with the overall medical evidence. (T. 27.)

To be sure, Plaintiff's treating mental health providers noted that Plaintiff needed continuous treatment for her difficulty with mood regulation and significant reactivity with poor anger management. (T. 287, 296, 297, 307, 308, 317, 318, 328, 329.) However, treatment notations also indicated that Plaintiff was cooperative. (T. 212, 287, 296, 297, 307, 317, 318, 328, 329, 330, 340, 341.) Plaintiff informed her providers that she returned to work part-time "in part" because money was tight, but also because she "simply needed to get out of the house." (T. 287.) Indeed, Plaintiff also indicated that she wanted to find employment because she was done raising children, however, her household changed when she took in a foster child. (T. 339.) She indicated that she stopped looking for work because her partner had a "good paying job" and she was at home as the primary caretaker. (*Id.*)

The ALJ properly evaluated Plaintiff's social abilities and her RFC determination, limiting Plaintiff to unskilled work which did not require her to supervise or manage others, is supported by substantial evidence in the record. The ALJ's determination is supported by the medical opinion of Dr. Harding and treatment observation of Plaintiff's providers. In addition, as stated by the ALJ, unskilled work ordinarily involves dealing

primarily with objects, rather than with data or people. (T. 28, *referring to* SSR 85-15.) Therefore, the ALJ did not err in her mental RFC evaluation regarding Plaintiff's social functioning.

Plaintiff further argues that the ALJ failed to consider her severe and non-severe impairments, such as asthma, carpal tunnel syndrome, and obesity, when formulating her RFC determination. (Dkt. No. 10 at 13-14 [Pl.'s Mem. of Law].) Plaintiff contends that the ALJ failed to include physical limitations in the RFC "despite evidence of limitations." (*Id.* at 13.) However, Plaintiff fails to provide any medical evidence in the record to support her argument that these impairments caused functional impairments. Indeed, as stated herein, the medical evidence is essentially silent regarding any functional limitations from physical impairments. Here, the ALJ did not err in her assessment of Plaintiff's physical impairment in her RFC assessment.

The ALJ properly considered Plaintiff's impairments, severe and non-severe, in formulating her RFC determination. The ALJ thoroughly outlined Plaintiff's testimony regarding her impairments, physical and mental, and the alleged limitations. (T. 25.) However, the ALJ ultimately concluded that Plaintiff was less than credible. (T. 25-26.) The ALJ also reviewed Dr. Ganesh's examination and medical source statement that Plaintiff had no limitations in her ability to sit, stand, walk, or use her upper extremities. (T. 26.) During his examination, Dr. Ganesh noted Plaintiff's height and weight. (T. 230.) As stated herein, the record was devoid of any evidence that Plaintiff's obesity limited her ability to function. No medical source referred to Plaintiff's obesity as affecting her functioning and Plaintiff "provides no explanation as to how a proper consideration of her obesity would indicate a lack of substantial evidence for the ALJ's

determination." *Browne v. Comm'r of Soc. Sec.*, 131 F. Supp. 3d 89, 102 (S.D.N.Y. 2015). None of Plaintiff's treating sources provided a medical source statement, nor did their treatment notations include functional limitations due to physical impairments. *See Mancuso v. Astrue*, 361 Fed.App'x. 176, 178 (2d Cir.2010) (ALJ did not err in consideration of obesity where "there [was] no factual basis for thinking that any additional and cumulative effects of obesity limited [the claimant's] ability to perform light work") (internal quotations omitted). Therefore, the ALJ did not err in failing to specifically address Plaintiff's obesity. Overall, the ALJ's physical RFC determination is ultimately supported by Dr. Ganesh's opinion and is upheld.

### C. The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986).

Plaintiff argues that the ALJ erred in her reliance on the Grids at step five because the ALJ's RFC failed to account for all of Plaintiff's functional limitations. (Dkt. No. 10 at 14-15 [Pl.'s Mem. of Law].) Plaintiff does not argue that the ALJ's RFC determination, as found, required vocational expert testimony. (*Id.*) Therefore, the ALJ

properly relied on the Grids at step five to determine that work existed in significant numbers in the national economy that Plaintiff could perform.

**ACCORDINGLY**, it is

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) **GRANTED**; and it is further

    **ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

    **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:    June 1, 2017

                                                William B. Mitchell Carter
                                                U.S. Magistrate Judge